UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHLONDA Y JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-04-01189 |
| | § | |
| JO ANNE B BARNHART, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff seeks judicial review of a denial of her claim for social security disability benefits. This Court has jurisdiction pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

### I. Standard of Review

The parties agree that the standard of review is whether the findings are supported by substantial evidence, and whether the proper legal standards were applied. *Id.*; *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994).

### II. Claimant's Burden

The parties further agree that the claimant has the burden of proving her disability by establishing a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commission applies a familiar five-step sequential evaluation. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (*per curiam*). A finding that a claimant is or is not disabled at any step in the sequence ends the analysis. *Id*. (citation omitted). In this case, the administrative law judge ("ALJ") found at the fifth step of the sequence that Plaintiff was not disabled because she retained the ability to perform other work existing in significant numbers in the national economy. 20 C.F.R.§ 404.1520(g)(1).

### III. Whether the ALJ's Findings Are Based on Substantial Evidence

*A. Whether the ALJ Properly Considered Issues of Mental Health*

The Court's most significant obstacle to holding that the ALJ's findings are based on substantial evidence is the internal inconsistency of the opinion. In the first evaluative paragraph of his decision, for example, the ALJ discusses the request by Plaintiff's counsel for a consultative psychological evaluation, and – in the same paragraph – rejects the request. This is troubling for at least three distinct reasons. First, the ALJ correctly notes that Plaintiff's only psychological assessment in the record "resulted in a diagnosis of a pain disorder with both psychological factors and a general medical condition." In view of the fact that the entire case concerns Plaintiff's pain and whether it is disabling, it is not at all obvious why the ALJ would point to a diagnosis of psychological factors as a contributing cause of Plaintiff's pain only to announce that the diagnosis not only did not need to be followed up on, but – as seems evident from the rest of his decision – could be confidently ignored.

The ALJ's handling of this sensitive issue is troubling, secondly, because of the reasons offered for not authorizing a psychological evaluation: "There was no diagnosis of depression. There is no evidence that the claimant has sought treatment for a mental impairment. There is no evidence that her treating sources have prescribed medication for a mental impairment. (citation omitted.)" For someone who does not possess a background in mental health, and perhaps even for one who does, the ALJ's reasoning seems overly bold. The record contains uncontradicted evidence that Plaintiff was in special education classes throughout her schooling, and that Plaintiff had not worked for more than 12 months prior to the decision. Her reasons for not seeking treatment for mental health, accordingly, could have related to her lack of knowledge of how to seek it, or lack of funds with which to seek it. The fact that medication has not been prescribed may have related to physicians' concerns about the interplay of medication for mental health and medication, which she had already been prescribed, for pain. Or, her particular mental condition might not be treatable by medication. And, surely, there are mental impairments other than depression that are serious and in need of treatment. For example, the record indicates that Plaintiff had taken medication for anxiety.

Third, the ALJ's treatment of the mental health issue is perhaps even more troubling in the context of the rest of his decision, in which he seems to offer his own untethered conclusions about

Plaintiff's mental condition. At one point, the ALJ offers this sweeping conclusion: "The fact that claimant was not taking medication indicates that her symptoms were not as severe as alleged." Nowhere does the ALJ acknowledge a likelier reason, apparent from the record, that Plaintiff might have not taken her medication: i.e., it made her drowsy, which is an oft-reported side effect of pain medication. In addition, contrary to what the ALJ asserted in his decision, the record indicates that Plaintiff often stated that the medications did not help to alleviate her pain. Earlier in his opinion, the ALJ, in discussing Plaintiff's resistance to medical advice that she stop wearing her cervical collar, said: "The claimant's failure to follow the recommendations of her doctors indicates that she is not motivated to be well in order to work." The ALJ does not give any indication of having considered that the collar might have served to alleviate the very pain that is the subject of her claim. In addition, the psychological assessment indicated that Plaintiff presented with symptoms of anxiety and depression, which would interfere with Plaintiff's participation in a treatment program. Yet another example of the ALJ's readiness to offer unsupported conclusions about Plaintiff's thoughts and motives concerns her work history: "The claimant's earnings record documents sporadic earnings over the years (citation omitted), a factor that could suggest a lack of motivation to work." Not only is the factual predicate for this statement highly doubtful (see below), but the conclusion is woefully incomplete. To be sure, a record of sporadic earnings **could** suggest a lack of motivation to work. It could equally well indicate – especially for an unskilled product of special education – that she had been the victim of a reduction in force, a regional or national recession, family responsibilities, another injury, or any of a host of other factors.

### B. The Factual Accuracy of the Decision

As already noted, certain of the statements of fact seem of questionable accuracy. The record evidence of Plaintiff's earnings does not, to this Court, warrant a finding that they were sporadic. Except for one lengthy period of non-employment, Plaintiff seems to have been a productive member of society whose wages gradually increased over time. The statement that Plaintiff did not want to get well is inconsistent with at least that part of the record that shows Plaintiff agreed to undergo surgery to alleviate her pain, even though she was counseled that risks included additional injury and even

death.  At another point, the ALJ notes that Dr. Marvin Chang, who treated Plaintiff for pain and apparently saw her more often than any other health professional, held the opinion that "the claimant experienced marked pain and would not be able to maintain attention and concentration for two hours at a time or perform work on a sustained basis for 8 hours a day, 40 hours a week (citation omitted)." In the next sentence, however, the ALJ states that, "The treating notes of Dr. Chang do not support his opinions."  The ALJ does not indicate in what respect the treating notes are inconsistent with Dr. Chang's opinion and, again, it is not obvious from the Court's review of the record why the ALJ perceived an inconsistency.

In a similar vein, this Court is troubled by the ALJ's unexplained picking and choosing from record evidence.  For instance, the ALJ essentially rejects the testimony of Dr. Gopalani, a board-certified neurologist, that Plaintiff is unable to work.  Later in the opinion, however, the ALJ finds it important that Dr. Gopalani advised Plaintiff to exercise and not to wear her cervical collar.  It is not clear why Dr. Gopalini's views can be discounted as to the central issue in the case, but are invoked as reliable on lesser points.  Aside from that, the ALJ does not point to any evidence that Plaintiff either could or could not, did or did not, follow the advice to exercise.

In a crucial finding, the ALJ stated that "the claimant's subjective complaints are found not to be fully credible but somewhat exaggerated."  Credibility issues are, of course, famously difficult to determine on an appellate record.  If the ALJ was inclined to believe that Plaintiff was exaggerating, however, he might have explained how that belief is consistent with the fact that Plaintiff – according to the ALJ himself – did not invoke mental illness in support of her claim, even though mental illness might be viewed as the most subjective of all maladies.  In addition, the psychological assessment found that Plaintiff's depression and anxiety scores were above average for pain patients, while her somatization score was below average for pain patients.  If the ALJ doubted Plaintiff's credibility, he could have bolstered his finding by questioning Plaintiff himself, which he did not do.  The entire hearing lasted only fifteen minutes.  The ALJ might also have addressed why, if Plaintiff was given to exaggeration, she did not rely on her well-documented history of seizures – which, in addition to other problems that the ALJ agreed Plaintiff did suffer from, could contribute to making her a very unlikely

new hire for any employer.

## IV.  CONCLUSION

For all the foregoing reasons, the Court is unable to find that the ALJ's decision is based on substantial evidence.  Therefore, Plaintiff's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED-IN-PART** and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 10) is **DENIED**.  The case is remanded to the same ALJ for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

SIGNED the 7th day of June, 2005.

Keith P. Ellison
United States District Judge

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**